UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTRACT DESIGN GROUP, INC., and
ROBERT MURRAY,

          Plaintiffs,                                   Case No: 10-14702

v.                                                 Hon. Victoria A. Roberts

WAYNE STATE UNIVERSITY, THE WAYNE
STATE UNIVERSITY BOARD OF GOVERNORS,
JAMES R. SEARS, JOAN M. GOSSMAN, and
JOHN L. DAVIS,

          Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 109)

## I.    INTRODUCTION

This is an action for alleged constitutional violations under the United States and

Michigan constitutions and claims based on tort and contractual theories, between a

contractor and a public university and its employees and agent.

Before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 12(b)(6). Defendants move for summary judgment on

Plaintiffs' claims for due process and equal protection violations, intentional interference

with business relations, account stated, and breach of contract.

Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. Summary

judgment for Defendants is granted on Plaintiffs' substantive due process and equal

1

protection claims under the U.S. and Michigan constitutions; there are no issues of fact regarding these claims. Summary judgment is also granted on Plaintiffs' claim for intentional interference of business relations, but only on Plaintiffs' assertion of Defendants' malice; it will proceed to trial on defamation. Summary judgment is denied on Plaintiffs' other claims; issues of material fact remain.

## II.   BACKGROUND

Contract Design Group, Inc. ("CDG") is a flooring contractor; Robert Murray is its president (collectively, "Plaintiffs"). Wayne State University is a Michigan non-profit corporation and a state educational institution; James R. Sears, Joan M. Gossman, and John L. Davis were employed by it during the times relevant to this action. Wayne State University Board of Governors ("Board") is a state agency which conducts the affairs of Wayne.

CDG provided flooring work for Wayne under lump sum contracts. CDG then also entered into contracts with Wayne to provide an indefinite amount of floor covering work ("blanket contracts"). The blanket contracts carried time-and-material and unit-priced components, and included prevailing wage requirements for compensation of workers in Wayne's projects. The last blanket contract was entered into in 2008.

The crux of this litigation relates to Wayne's decision in 2009 to suspend CDG's work and terminate its contracts for alleged fraudulent behavior, breach of contract, and noncompliance with Michigan's Prevailing Wage and Projects Act, P.A. 166 of 1965 ("PWA"). Whistleblowers informed Wayne of CDG's alleged noncompliance. In October, 2009, Wayne notified CDG that it was considering debarring it from participation in any of Wayne's bid processes or awards, and gave it twenty days to submit information in

2

opposition to the proposed debarment and a written request for a meeting to discuss it. A hearing was held on December 7, 2009, and on December 16, 2009, Plaintiffs were notified that they were debarred for three years. They unsuccessfully protested the debarment.

Plaintiffs say the hearing was a "kangaroo court" proceeding; it was conducted without proper notice of the allegations against them, it was done without following Wayne's debarment policies, it was not recorded, and it did not afford Plaintiffs an opportunity for argument or presentation of evidence and testimony. They also say that they were *de facto* debarred prior to the hearing.

Plaintiffs claim that Wayne has refused to pay them for work they continued to perform on a lump sum basis up to the time of debarment, outside of the blanket contracts proceedings.

On July 8, 2011, Plaintiffs filed this lawsuit, claiming that Defendants assumed the State's function when prosecuting the prevailing wage law, and violated their substantive and procedural due process and equal protection rights protected by the Fourteenth Amendment to the United States Constitution. Plaintiffs also allege state law claims; they say that Defendants violated the Michigan Constitution for the same reasons as the United States Constitution, and intentionally interfered with business relations and prospective business relations, and that their account with Wayne is stated and that their lump sum contracts were breached because they were not compensated.

## III.   STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no

3

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).

In reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## IV.    ANALYSIS

Defendants move for summary judgment on Plaintiffs' claims for: (A) violations to the U.S. Constitution; (B) violations to the Michigan Constitution; (C) intentional interference with business relations; (D) account stated; and, (E) breach of contract.

**A. Violations of Plaintiffs' Rights Under the U.S. Constitution**

Plaintiffs allege 42 U.S.C. § 1983 claims against Defendants for violations of their procedural and substantive due process and equal protection rights under the Fourteenth Amendment to the U.S. Constitution.

"Where any person acting under color of state law abridges rights secured by the Constitution or United States laws . . . § 1983 provides civil redress." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citing 42 U.S.C. § 1983; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989)). "To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) a deprivation of a right secured under the Constitution or federal law; and (2) that a person acting under color of state law subjected him to the deprivation or caused him to be subjected to the alleged deprivation." *Alford v. City of Detroit*, 657 F. Supp. 2d 847, 852-53 (E.D. Mich. 2009) (citing *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003)).

**1. Procedural and Substantive Due Process Claims**

In Counts One and Two, Plaintiffs claim substantive and due process violations. Plaintiffs say that Defendants' prosecution of Plaintiffs with a premeditated malicious, bad faith intent to debar them, violated their substantive due process rights. They also say they were denied due process in that the prosecutorial and adjudicatory functions of Wayne were mixed.

5

Both procedural and substantive due process claims require a showing that a constitutionally protected property or liberty interest has been infringed. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) ("To establish a procedural due process claim pursuant to § 1983 . . . [plaintiffs] must establish . . . that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution . . . ."); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir.2008) ("'To state a substantive due process claim ... a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action.' ") (citation omitted).

Defendants argue that a contractor does not have a property or liberty right to be awarded a government contract or to bid on public projects.

Defendants' argument is unavailing; they mischaracterize CDG's claimed property and liberty interests. A constitutionally protected property interest *in a publicly bid contract* exists when a bidder can show that it was actually awarded the contract and then deprived of it. *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 348 (6th Cir. 2006) (citing *Enertech Electrical, Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir.1996)). In addition, although the right to bid on government contracts is not a property interest, a contractor's liberty interest is implicated when denial of a government contract is based on a charge of fraud or dishonesty. *Lasmer Indus., Inc. v. Def. Supply Ctr. Columbus*, 2:08-CV-0286, 2008 WL 2457704 (S.D. Ohio June 13, 2008) (citing *Transco Security, Inc. v. Freeman*, 639 F.2d 318, 321 (6th Cir.1981).

6

CDG was awarded a publicly bid blanket contract in 2008, which was later terminated--and CDG was debarred from future bids--based on, inter alia, allegedly fraudulent behavior. Accordingly, Plaintiffs have a protected property interest in the terminated blanket contract and a protected liberty interest in their debarment from Wayne's projects.

## I. Procedural Due Process Violations

To establish a procedural due process claim under § 1983, plaintiffs must satisfy three elements. They must show that: (1) they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) they were deprived of this protected interest within the meaning of the Due Process Clause; and (3) the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Hahn v. Star Bank*, 190 F.3d at 716.

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). In situations of potential debarment, courts hold that sufficient notice and an opportunity to respond are due. *See Gonzalez v. Freeman*, 334 F.2d 570, 578 (D.C. Cir. 1964) ("Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made."); *Highview Eng'g, Inc. v. U.S. Army Corps*

7

*of Engineers*, 864 F. Supp. 2d 645, 648 (W.D. Ky. 2012) ("The Fifth Amendment entitles

. . . a bidder to certain procedural safeguards, including notice of the charges, an

opportunity to rebut them, and sometimes a hearing.); *Lasmer Indus., Inc. v. Def.*

*Supply Ctr. Columbus*, 2:08-CV-0286, 2008 WL 2457704 (S.D. Ohio June 13, 2008)

(the sufficiency of a hearing is relevant to a procedural due process claim).

Furthermore, *de facto* debarment is also subject to due process requirements.

*See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877 (2d

Cir. 1996) (recognizing that due process requirements apply to a *de facto* debarment

when a state employee's letter instructed agencies to reject all proposals by the

plaintiff); *Leslie & Elliott Co. v. Garrett*, 732 F. Supp. 191, 195, 198 (D.D.C.1990)

(stating that *de facto* debarment occurs where there is either "a statement that the

agency will not award a contract to the disappointed bidder in the future" or "conduct of

the agency" that indicates the existence of a de facto debarment).

Defendants argue that they are entitled to summary judgment on Plaintiffs' claim

for procedural due process violations because Wayne held numerous meetings with

CDG representatives and provided ample notice and an opportunity to be heard.

Plaintiffs say they were not afforded due process because, prior to the hearing,

they were *de facto* debarred without notice or opportunity to rebut. Regarding the

hearing, they say: (1) notice was defective; (2) the decision-maker was not neutral; (3)

they had a right to be represented by counsel and that right was denied; (4) they did not

have an opportunity to present evidence and cross-examine adverse witnesses; and (5)

it was not recorded.

8

The Court believes there are numerous genuine issues of material fact precluding summary judgment in favor of Defendants. Summarily, these include, but are not limited to:

- Whether Plaintiffs were *de facto* debarred prior to the hearing; and

- Whether Plaintiffs were given a meaningful opportunity to rebut the charges against them.

Plaintiffs meet their burden to raise genuine issues of material fact.

Defendants also argue that this Court may not award compensatory damages for a procedural violation absent proof that Plaintiffs were injured. In essence, Defendants argue that Plaintiffs cannot recover damages on their procedural due process claim because any "technical violation" of the debarment hearing would be harmless in light of the alleged factual basis for debarment, and because they were not entitled to future bid awards.

This argument is unavailing, especially considering that Defendants' "technical violation" may amount to a crucial infringement on a constitutionally-protected right. First, assuming that Defendants' argument is valid, the Court finds there are genuine issues of material fact surrounding the basis for debarment as well as Plaintiffs' damages. Second, the Court notes that "a procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004); *see also WJR, The Goodwill Station v. FCC*, 174 F.2d 226, 241 (D.C. Cir.1948) ("Denial of a procedural right guaranteed by the Constitution—in this instance denial of a hearing

9

guaranteed by the due process clause—is never 'harmless error.'"), rev'd on other

grounds, 337 U.S. 265 (1949).

Accordingly, summary judgment for Defendants on Plaintiff's procedural due

process claim is denied.

### ii. Substantive Due Process Violations

"[E]xecutive action violates substantive due process only when it shocks the

conscience but ... the meaning of this standard varies depending on the factual context."

*UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 399–400 (3d Cir. 2003).

Conduct most likely to support a substantive due process claim is "conduct intended to

injure in some way unjustifiable by any government interest is the sort of official action

most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*,

523 U.S. 833, 849 (1998) ("Historically, this guarantee of due process has been applied

to deliberate decisions of government officials to deprive a person of life, liberty, or

property")).

Defendants argue that CDG's debarment does not rise to the conscience-

shocking level required to support a substantive due process claim. They say that there

is no evidence that Wayne intended to put Plaintiffs out of business.

Plaintiffs say that Wayne interfered in bad faith with CDG's ability to work on

present and future public work projects, and employed a sham meeting to cover up its

bad-faith debarment. They say these acts are conscience-shocking behavior which

implicates substantive due process.

The interests protected by substantive due process are much narrower than

10

those protected by procedural due process. *Bell v. Ohio State Univ.*, 351 F.3d 240,

249-50 (6th Cir. 2003). Substantive due process protects those rights that are "so

rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Local 342 v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir.1994) (internal

quotation marks omitted). Traditionally, the types of interests recognized under

substantive due process are those "'deeply rooted in this Nation's history and tradition,

and implicit in the concept of ordered liberty, such that neither liberty nor justice would

exist if they were sacrificed.'" *Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir.

2002) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

The Sixth Circuit holds that "[m]ost, if not all, state-created contract rights, while

assuredly protected by procedural due process, are not protected by substantive due

process. . . . Routine state-created contractual rights are not so vital that neither liberty

nor justice would exist if [they] were sacrificed . . . and protection of these rights does

not fall within the ambit of the Substantive Due Process Clause." *Willie McCormick &*

*Associates, Inc. v. City of Detroit*, 61 F. App'x 953, 957 (6th Cir. 2003) (internal

quotation marks omitted).

While important, Plaintiffs' concerns "simply are not sufficiently weighty to

warrant their protection under the substantive due process rubric." *Empire Transit*, 37 F.

Supp. 2d at 340 (finding that city's *de facto* debarment of contractor from working on city

projects did not violate substantive due process). Plaintiffs cannot show that

Defendants' actions are "conscience-shocking or oppressive in a constitutional sense

that they threaten fundamental notions of liberty and justice." *See, e.g., John Gil Const.,*

11

*Inc. v. Riverso*, 72 F. Supp. 2d 242, 256 (S.D.N.Y. 1999).

Accordingly, Defendants demonstrate that there is no genuine issue of fact, and they are entitled to judgment as a matter of law. Summary judgment on Count 1--substantive due process--is granted in favor of Defendants.

### 2. Equal Protection Claim

In Count Three, Plaintiffs allege that Defendants are treating them differently from other similarly situated union contractors in that Defendants are maliciously prosecuting them because CDG's employees chose to exercise their rights to remain union free under Section 7 of the National Labor Relations Act, 29 U.S.C. § 151. They say this violates their equal protection rights under the Fourteenth Amendment to the U.S. Constitution.

Defendants argue that they are entitled to summary judgment on Plaintiffs' equal protection claim because there is no genuine issue of material fact surrounding this claim, given that the constitutionality of the PWA--pursuant to which Defendants allegedly found that Plaintiffs breached their agreement and debarred them--has been upheld by the Michigan Court of Appeals.

Plaintiffs did not respond to Defendants' motion for summary judgment on this claim and its analogous claim under the Michigan Constitution.

Plaintiffs' failure to respond amounts to abandonment, especially in light of their extensive responses to Defendants' arguments on other claims. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a

12

motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 Fed. Appx. 19, 24–25 (6th Cir.2003) ( "[b]ecause Plaintiffs failed to brief the issue before the district court ... Plaintiffs abandoned their ... claim."); *Anglers of the Au Sable v. United States Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

Because Plaintiffs abandoned their equal protection claim, summary judgment on Count Three in favor of Defendants is appropriate.

### B. Violations of Plaintiffs' Rights Under the Michigan Constitution

In Count Four, Plaintiffs claim that Defendants' acts also deprived them of their liberty and property interests without due process of law, and denied them equal protection under the law, in violation of Article 1, §§ 2 and 17 of the Michigan Constitution.

The Court's analysis on Plaintiffs' due process claims under the federal constitution applies equally to their claims under the Michigan Constitution. *See Lucas v. Monroe Cnty.*, 203 F.3d 964, 972 (6th Cir. 2000) ("Because Plaintiffs' rights under the Michigan Constitution essentially track those guaranteed by the United States Constitution, the same analysis that governs their federal constitutional claims applies to their corresponding state claims."); *Gradisher v. Cnty. of Muskegon*, 255 F. Supp. 2d 720, 731 (W.D. Mich. 2003) (citing *In re CR*, 250 Mich.App. 185, 204, 646 N.W.2d 506,

516 (2002) (per curiam)); Johnson v. City of Kalamazoo, 124 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) ("The due process protections afforded by the Michigan Constitution are co-extensive with those afforded under the United States Constitution.")

In addition, Plaintiffs also fail to respond to Defendants' argument on their equal protection claim under the Michigan Constitution.

Accordingly, partial summary judgment is granted in favor of Defendants on Count Four as to Plaintiffs' substantive due process and equal protection claims under the Michigan Constitution. Plaintiffs' procedural due process claim under the Michigan constitution will proceed to trial.

### C. Intentional Interference with Business Relations

In Count Five, Plaintiffs claim that Defendants intentionally interfered with their business relations by wrongfully asserting to persons and entities that Plaintiffs were subject to debarment. They say Defendants' intent was to harm and prevent them from entering into future public works projects.

Under Michigan law, to prove intentional interference with business relations, Plaintiffs must establish: (1) a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of a relationship or expectancy; and (4) damages. *Compuware Corp. v. Int'l Bus. Machines*, 259 F. Supp. 2d 597, 604 (E.D. Mich. 2002) (citing *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.*, 175 Mich. App. 723, 735, 438 N.W.2d 349 (1989)).

Only a third party to a contractual or business relationship may be sued for

14

tortious interference. See *Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 954 (E.D. Mich.1998); *Murphy v. Birchtree Dental, P.C.*, 964 F. Supp. 245, 250 (E.D. Mich.1997); *Reed v. Metro Michigan Girl Scout Council*, 201 Mich. App. 10, 506 N.W.2d 231, 233 (1993). Corporate agents are generally not liable for tortious interference with regard to the corporation's contracts or business relationships, unless the agent acted purely for personal gain with no benefit to the corporation. *Murphy*, 964 F. Supp. at 250; *Reed*, 506 N.W.2d at 233.

Defendants' ground for summary judgment on this count relates exclusively to the third element of Plaintiffs' claim--whether there was intentional interference reflected in a *per se* wrongful act or malicious purpose--and the Court therefore limits its analysis to this issue.

To make out a claim for tortious interference with business relations, Plaintiffs "'must allege the intentional doing of a *per se* wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading [P]laintiff's contractual rights or business relationship.'" *Chrysler Int'l Corp. v. Cherokee Export Co.*, 134 F.3d 738, 745 (6th Cir.1998) (quoting *Feldman v. Green*, 138 Mich. App. 360, 368, 360 N.W.2d 881 (1984)). "'To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference.'" *Ritten v. Lapeer Reg'l Med. Ctr.*, 611 F. Supp. 2d 696, 729-30 (E.D. Mich. 2009) (quoting *Mino v. Clio School District*, 255 Mich. App. 60, 661 N.W.2d 586, 597 (2003).

Tortious interference with business relations may be grounded on defamatory

15

statements. *Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 401 (1995).

Defendants argue that Plaintiffs cannot succeed on this claim because there are no third parties to the 2008 blanket contract, and that the debarment of a contractor to bid on university contracts is not a *per se* wrongful act.

Defendants mischaracterize Plaintiffs' claim. Plaintiffs' theory--as pled in Count Five--is that Defendants somehow interfered with their expectancy to enter into future public works projects in Michigan, not only the projects of Wayne. Accordingly, Defendants' argument regarding university projects and third parties is inapplicable.

In conclusory fashion, Plaintiffs say that Defendants acted with malice. They also say that Defendants' acts are wrongful *per se* because they were defamatory. Defendants say that Plaintiffs failed to demonstrate specific affirmative acts which corroborate a malicious purpose, and that their statements were not defamatory because they were true.

Plaintiffs failed to provide factual evidence on Defendants' alleged malice. Their claim of intentional interference of business relations based on malice fails.

Nonetheless, there remain genuine issues of material fact on whether Defendants' statements were defamatory or whether they were true, based, in part, on the alleged reasons for debarment.

Accordingly, summary judgment on Count Five is denied in part and granted in part. Plaintiffs' claim will proceed based on defamation.

### D. Account Stated

In Count Six, Plaintiffs claim that CDG invoiced Wayne under the lump sum

contracts for work on a lump sum basis, outside of the blanket contracts. They say the account is stated because Wayne has not paid the balance due.

Defendants claims they are entitled to dismissal of this claim because CDG has not provided information on a time and material basis to substantiate any outstanding invoices, which it says it is required under the 2008 blanket contract.

Plaintiffs say they have provided all documentation evidencing its right to payment.

There remain issues of fact on which agreement controls the work performed, whether the requirements of such agreements are as Defendants assert, and, ultimately, whether the account is stated.

Summary judgment on Plaintiffs' claim for account stated is denied.

### E. Breach of Contract

In Count Seven, Plaintiffs claim that Wayne breached the lump sum contracts by failing to pay CDG the amount due for the work performed under them.

Defendants argue that because the account is not stated, Plaintiffs' breach of contract claim fails, given that no payment is due until Plaintiffs satisfy the contractual conditions. Their argument is--like that against the account stated claim--grounded on the time and materials requirements under the 2008 blanket contract, and also on the prevailing wage requirements under it.

Defendants' argument fails. Plaintiffs' claim for breach of contract is grounded upon the lump sum contracts and breach for failure to pay under them. Genuine issues of material fact remain regarding the contractual obligations--and breach of them--under

17

the applicable, valid agreements for the services rendered.

Summary judgment on Plaintiffs' claim for breach of contract is denied.

## V.   CONCLUSION

Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. The Court grants summary judgment to Defendants on Counts One and Three. The Court grants summary judgment on Count Four with respect to the substantive due process and equal protection claims under the Michigan Constitution. The Court also grants summary judgment on Count Five only with respect to Plaintiffs' assertion of malice.

The claims that will proceed to trial are:

(a) Count Two: Procedural Due Process under the U.S. Constitution;

(b) Count Four: Procedural Due Process under the Michigan Constitution;

(c) Count Five: Interference with Business Relations based on defamation;

(d) Count Six: Account Stated; and

(e) Count Seven: Breach of Contract.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 15, 2013

18

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 15, 2013.

S/Linda Vertriest
Deputy Clerk